## H. & T. C. R'y Co. v. Barney Devainy.

(Case No. 5085.)

1. Newly discovered evidence.— An emigrant to America, having a ticket to Galveston, presented it to a brakeman on appellant's train, who informed him that he was on the right train. After going a few hundred yards on the train he was put off by the conductor at night, and in trying to walk back on the railway track fell through trestle work and received serious damage, for which he sued the company. *Held*, that under the circumstances of the case, which are more fully detailed in the opinion, it was not contributory negligence for the appellee to attempt to make his way back to the depot on the railway track.

2. New trial — Newly discovered evidence.— After a verdict had been rendered for the injured man for $2,700, in the case above stated, the railway corporation moved for a new trial on the ground of newly discovered evidence. They filed an affidavit showing that one J. W. Miller heard the injured man and his companion say, on the night of the injury, that they had started for the depot on a dirt road, but fearing that they might not be able to find the depot, they got on the railway track, and the plaintiff, supposing he was on level ground, stepped off and fell in the ravine." *Held*, it appearing in evidence that the man Miller had assisted to convey the injured man to the depot on the night when he was injured, and had been all the time in the employment of the defendant company, it would seem that proper diligence on the part of the company might have discovered the testimony sooner, and the application for a new trial was properly overruled.

Appeal from Grayson. Tried below before the Hon. Richard Maltbie.

Suit by appellee, brought March 6, 1883, and an amended petition filed October 25, 1883.

The petition alleged that the plaintiff and one Rush were immigrants from Ireland, and were going to Galveston. They had immigrant tickets from Philadelphia to Galveston, but that their route from Denison was over the Missouri Pacific Railroad. They reached Denison in the night. Some time afterwards one of defendant's trains came up to the platform, and the two immigrants approached the brakeman, who stood at the door of one of the cars, presented their tickets, and asked him if that was the train to Galveston. He told them that it was, and directed them to enter, which they did.

The train started, and had gone only two or three hundred yards when the conductor examined plaintiff's ticket, and told him he was on the wrong train and must get off. The train was immediately stopped and the two men directed to get off, which they did. That this occurred on or near the end of a trestle thirty or forty feet

high, and that it was so dark that they could not see their way. Plaintiff made a few steps, and fell to the bottom of a deep ravine, whereby he was seriously and permanently injured. Plaintiff was about thirty-five years old, in perfect health, and was a common laborer.

He was completely disabled by injury to his back and one of his ankles. He claimed $10,000 actual damages, and the same amount as exemplary damages.

The defendant demurred, denied generally, and charged that, if plaintiff was injured, it was the result of his own carelessness.

Judgment rendered for plaintiff for $2,700.

Among other things, the court charged the jury that, if the plaintiff's ticket did not entitle him to travel on that train, the conductor might lawfully put him off; but it must be in a place of safety. "And if you believe that the conductor did not land the plaintiff in a place of safety, but that it was in one of danger, and that, in attempting to make his way back to Denison, he fell through a trestle on defendant's road, while acting with due care and caution, and was thus injured, . . . you will find in favor of the plaintiff."

Plaintiff and Rush both testified that they were put out on the track, the cars barely coming to a halt and immediately starting again; that they were in perfect darkness, and could not see the track or anything else; that, after making a few steps, plaintiff fell to the bottom; that Rush crawled over the trestle to the depot and got help and a light, and then moved plaintiff to the depot. There was no dispute about the character of the injuries.

The conductor and several other witnesses swore that the men were put out about one hundred feet south of the trestle at a place where a dirt road crosses the track and leads back to the depot. The conductor said he held his light and pointed out the road to the men; told them to follow that back to the depot, and "to look out for openings in the road."

It appears that about one hundred feet south of the dirt road a railroad crosses the defendant's track. All trains stop before reaching this crossing, and the conductor and engineer stated that the stopping place is at or near the crossing of the dirt road; but other witnesses of the defendant testified that the trains often stopped north of the dirt road, and even on the trestle.

It seemed to be left uncertain where the train stopped on the night of the accident — whether at the dirt road or at the trestle. Plaintiff and Rush denied that the conductor told them of the dirt

road, or gave them any directions, except to go back to the depot. One of the grounds of the motion for a new trial was newly discovered evidence.

One J. W. Miller made affidavit that on the night of this accident he heard the two men say that they had started back on the dirt road, but fearing that they might not be able to find the depot, they got on the railroad track, and plaintiff, supposing he was on level ground, stepped off and fell into the ravine.

*R. De Armand*, for appellant.

*Woods, Wilkins & Cunningham*, for appellee.

Delany, J. Com. App.— The first assignment of error questions the first paragraph of the charge in which the jury were told that under the circumstances shown by the evidence the conductor was justifiable in putting the plaintiff off the train, but was required to put him off at a safe place.

Whether this charge was correct or not, the appellant at least cannot complain of it and appellee does not object to it. When we consider that the plaintiff was on the car by a mistake which was caused by the negligence of the brakeman; that the mistake was discovered within three hundred yards or less of the depot; and that the facts were fully explained to the conductor; and considering further the darkness of the night, and the apparent danger to the men of being put off at such a place and time, we may well question whether it was not the duty of the conductor to take the plaintiff back to the depot. We do not express any opinion on the question, but we feel warranted in saying that appellant has no ground of complaint against this part of the charge.

There is no merit in the second or in the third assignment. The evidence is sufficient to sustain the verdict.

The fifth assignment is that the court erred in overruling the motion for a new trial. The only reasonable feature of this motion is the allegation of newly discovered evidence, viz., that of J. H. Miller. In the first place Miller appears to have been one of the employees of the company. He was at the depot at the time of the accident, and was one of the two men who went with Rush to carry the plaintiff from the ravine to the depot after he was hurt. It would seem that, with proper diligence, this testimony might have been discovered before the trial. In the second place, this evidence is merely cumulative, and thirdly, it is by no means certain or highly probable that if it had been introduced it would have changed the

result.  See Hatchett *v.* Conner, 30 Tex., 104; Frizzell *v.* Johnson, 30 id., 31.

The defense proceeds upon the theory that if the plaintiff attempted to walk back to the depot on the railroad track, this was an act of negligence on his part and he cannot recover.  Now, even if we admit this to be true as a general rule, it may well be doubted whether it is true in this case.  It was only a few hundred feet to the depot.  The circumstances were peculiar.  The men were utterly confounded at the thought of being put off.  The plaintiff told the conductor that "it was a wrong thing to put them off in that way."  The conductor admits that he could not make them understand why they were put off.  It was so dark that they could not see even the ground on which they were to walk.

They were not told that there was a trestle work on the railroad track or a ravine under it, but the conductor says he showed them the dirt road by the light of his lamp and told them to take that and " to look out for openings in the road."  What these words may mean we do not pretend to know, but they must have been intended as a warning or they would not have been spoken.  Thus when the train passed on the men were left standing there in the darkness.  Before them, or near them, was a dirt road which they could not see, but in which they were told there was danger.

There was also the railroad track, which was equally invisible, but as they were not warned of any danger there they might (and not without reason) suppose that their safest and only way to get back was by that route.  Without attempting to determine what the men should have done in this dilemma, we have no hesitation in concluding that they should not have been placed in such a position.

Our opinion is that the judgment should be affirmed.

                                                    AFFIRMED.

[Opinion adopted January 30, 1885.]