No. 2527.

THE MISSOURI PACIFIC RAILWAY COMPANY v. L. A. EVANS.

1. INTOXICATION NO EXCUSE FOR NEGLIGENCE.—It can not be conceded to one incapable of protecting himself from the voluntary use of intoxicants, that by entering upon a train from which he is forbidden, and without the knowledge or consent of the conductor, that thereby he can impose upon the railway company any duty beyond ordinary care to protect him from injury while upon the train, and to leave him in a reasonably safe condition.

2. INTOXICATION DOES NOT RELIEVE FROM DUTY OF CARE.—If intoxication, to the extent of insensibility, is chargeable as negligence when contributing to personal injury it would follow that a less degree of, or partial, intoxication would not excuse or dispense with the duty of self protection by proper care to avoid danger.

APPEAL from Anderson. Tried below before the Hon. F. A. Williams.

The opinion gives a statement of the case.

No brief for appellant came into hands of the Reporter.

*Gammage & Gammage* and *A. W. Gregg*, for appellee: In support of the general proposition of the liability of appellant, we quote the following rulings, all of which are applicable to the facts in this case, and which, being grouped, fully sustain the finding of the jury in the case at bar, and sustain the trial court in overruling appellant's motion for new trial.

Where plaintiff was on car by mistake, caused by negligence of brakeman, and was put off three hundred yards from depot on a dark night, considering the darkness of the night, and danger to men to be put off at that place at that time, it was the duty of the conductor to take him back to the depot. The conductor had the right to put him off, but it must be done at a safe place. (Houston & Texas Central R'y v. Devainy, 63 Texas, 174.)

The putting Evans off at the time and place, and under the circumstances detailed, the injury will not be considered too remote if, according to the common experience of mankind, it ought to have been apprehended as a consequence of the act. (Pierce on Railroads, 311; Laws v. Atlantic Works, 111 Mass., 136; Derry v. Flitner, 118 Mass., 131.)

The company can not indulge in a presumption that a person on its track will take care of himself where he is intoxicated or asleep or otherwise off his guard. (Pierce on Railroads, 331, notes 5 and 6.)

The company has no right to inflict wanton injury on persons who are unlawfully upon their track, and where life and limb are involved, that conduct may well be considered wanton where, although able to do so, they neglect to arrest the engine, which they have good reason to believe will result in injury to the wrong doer. A wrong doer is not necessarily an

outlaw as to his property, much less to his person. (Pierce on Railroads, 330, and note 2.)

Where danger is seen by servant of a railroad company, and he wantonly disregards it, the damages are increased. (Houston & Texas Central R'y v. Smith, 52 Texas, 178.)

The company is liable for damages for running over a man who is in a helpless condition. (H. & T. C. Ry. v. Sympkins, 54 Texas, 615; Evansich v. Railway, 57 Texas, 123; Mo. P. Ry. v. Weisen, 65 Texas, 443.)

One may be lawfully upon the cars of defendant company without paying fare if he is there by the permission of the officers or servants of the company. The confidence induced by undertaking even a gratuitous service for another is a sufficient legal consideration to create a duty in its performance, hence a railway company is liable in damages for negligence which results to the injury of a passenger who is lawfully on its car, whether he is charged and pays his fare or not. (Prince v. I. & G. N. Ry., 64 Texas, 144.)

In Ormond v. International & Great Northern Railway Company, 64 Texas, 489, the court say: "If his fall on railroad track was by accident or misadventure, and that fall contributed to his death, the plaintiff may yet recover, for without the fall the injury would not have occurred, and if he is not at fault at falling the negligence effecting his death is not excused." If passenger is ejected at an uncomfortable place, or an unsafe place, the company is liable for injuries resulting from an effort to reach a place of comfort and safety. (I. & G. N. Ry. v. Gilbert, 64 Texas, 540.) The conditions and surroundings of the place where he was forced from the cars and held on the ground and left "were well known to the employes of the road." The influence that they would have upon a person in the condition Evans was in then must have also been very well known to them, and they might reasonably have contemplated the consequences which did result. (63 Texas, 174, H. & T. C. Ry. v. Devainey; 64 Texas, 540, 541, I. & G. N. Ry. v. Gilbert.)

In case of a drunken man lying on the track where he is killed by a passing train, the company is held liable unless it shows affirmatively the performance of every requirement. It is not enough to show that the accident would have inevitably occurred even if the precautions had been taken which were omitted. (Note 5, 4 Tenn. Cases, Thompson on Negligence, 451.)

WALKER, ASSOCIATE JUSTICE.   This appeal involves the degree of care or the duty owing by the railway company to the deceased, Ed. Evans, the son of plaintiff, and for whose death the suit was brought, under the circumstances of his death.

February 9, 1886, at Oakwoods, a village on the railway of appellant, a few miles west of the Trinity river, Ed. Evans, aged twenty-six years and drunk, his condition having been noticed by his friends in the village, entered upon a freight train run by the defendant.   The rules of the company forbade the carriage of passengers on such trains.   The conductor did not know that Evans was upon the train, and the head brakeman, the only one of the employes shown to have been aware of his presence, thought he belonged as clerk, or in some way, to a gang of wood choppers in the employ of the company, which had been taken upon the train.   The train left Oakwoods about dark.   Evans was upon the front flat car, became restless so as to require the attention of the head brakeman for his safety.

While on the car Evans offered to pay his way to Palestine, where he said he had to go, naming some prominent citizens of that city as his friends.   He finally became quiet and fell asleep.   After crossing the Trinity the train was stopped to water at Long lake tank, near the east end of the bridge over the river.   From the tank westward fifty yards was the bridge watchman's house; southwest and about same distance, a negro's house, and southward three hundred yards Mrs. Butler's house.   There was no hotel at Long lake station, but one witness testified that he had stayed all night at Mrs. Butler's.   There was no depot or ticket office there, but it is a station and passengers usually got on and off there.   The station was in a field and the railway track was frequently traveled by persons going east and towards Tucker, a village three and a half miles distant.

On stopping at the tank Evans climbed upon the tender and was ordered down by the engineer.   With aid from Gillis, the head brakeman, he got down.   He then walked one hundred and fifty or one hundred and sixty feet, to near the end of the train.   When the train started Evans was at a box car, apparently trying to enter.   Gillis seeing his danger caught him by the arm and led him about fifteen feet from the track, between the tank and the watchman's house, and he sank down and was there left alone.   Gillis testified that he did not think

---

---

Evans able to take care of himself while on the train nor when left.

About fifteen minutes after the train left it was followed by another.  A witness, who was engineer of the second train, testified that he passed Evans about two hundred and fifty yards east of the tank, where he had been left by the first train.  Evans then was walking on the ends of the cross ties outside of the rails; as the train approached him he staggered out to the right and walked along until the train passed.  This witness, on looking back, saw Evans walk back upon the track. About fifteen minutes later a third train passed, also halting at the tank.  The conductor testified to first seeing Evans lying upon the track at the cattle guard, five hundred yards east of the tank, and at the exit from Mrs. Butler's field.  The witness first saw Evans about seventy-five feet ahead; he was dressed in black and with face from witness, lying upon the track where he had fallen.  Witness reversed the engine and whistled for brakes, but it was too late.  Several cars passed over Evans, causing his death.  His leg was broken and skull fractured.  Witness left a man with Evans and went on to Palestine and reported the matter.  The village of Tucker is three and one-half miles east of the tank, and a wagon road extends to it from near the cattle guard where Evans was killed.

The petition alleged negligence on the part of the defendant, first and chiefly in the want of care under the circumstances, looking to the incapacity of Evans to take care of himself; and secondly, that there was want of care in running the train upon him.  The charge of the court limited the jury to the first count, for want of care in leaving him at the tank in his condition and without protection.  Upon this the court instructed the jury:

"If, however, the evidence satisfies you that at the time he (deceased) got on the train he was mentally incapable from the use of intoxicants of caring for and protecting himself, and of forming any judgment as to what he was doing; and if defendant's employes in charge of the train knew that such was his condition, or knew from his conduct such facts as reasonably would have produced such knowledge in an ordinary mind —then it was their duty to prevent him from getting upon the train; and if they allowed him, with such knowledge, to get upon the train, and took him away from Oakwoods, it became their duty to exercise reasonable care to see to his safety, while

they would still have the right at a proper time and place to put him off. In so doing, if he was in the condition above defined, they would have to exercise such care as is just defined to land him at a reasonably safe place, taking into consideration his condition and all other circumstances affecting the question. * * * If Evans was in the condition defined and got off of the train, still if you find that the degree of care defined would have required that he be not left at that point, then it was their duty to take him back upon the train, or do what the rule as above given would have required for his safety; and their failure to do so would be the same as if they had put him off."

The defendant asked the following charge:

"You are further instructed that the plaintiff, L. A. Evans, is not entitled to recover if her son was not in fact put off of the train wrongfully, but was put off at a place where he could, by ordinary care, have avoided the injury. And if the deceased would not have been injured but for his intoxication, the plaintiff can not recover."

The court refused to give it as requested, but gave it with the following qualification:

"Given with the qualification that it is to be considered in connection with the general charge, and with the further explanation that if Evans, when he got on the train at Oakwoods, was rendered incapable by drink or otherwise to the extent defined in the general charge; and if defendant's employes, knowing this, carried him away on the train and put him off or left him at the tank still in that condition, then the rule stated in the above special charge does not apply, unless Evans before he was killed recovered so far as to be able to use care or discretion."

The defendant asked the following charge, and it was refused:
"If Ed. Evans saw, or could have seen, one or more houses near by the place where he was left, near by the tank, it was his duty to have tried to get accommodation there, if this would have been the course of a man of ordinary prudence. It is the duty of one put off of a train, even wrongfully, to take reasonable care of himself, and he can not recover damages for an injury which would not have occurred if he had done so."

It is evident from these paragraphs from the record that the court impressed upon the jury that the defendant was charged

with the duty of additional care towards the deceased by rea-son of his condition; by reason of his intoxication, for that was the only disturbing cause present and interfering with the ordinary course of action by the deceased; and that, by reason of such intoxication, the use of ordinary care of himself was excused or dispensed with.

The court is referred to several cases involving the proper care required of railroad employes in putting persons from the trains when improperly aboard them. They will be ex-amined.

In Houston & Texas Central Railway Company v. Devainey, 63 Texas, 172, judgment was affirmed for damages received by plaintiff upon being put off the cars two hundred or three hundred yards from a station, in the dark, where, after taking a few steps, he fell through a trestle and was injured. The court having charged the right of a conductor to put a pas-senger off the train for want of a ticket, that it could be law-fully done, but it must be in a place of safety.

In International & Great Northern Railway Company v. Gilbert, 64 Texas, 540, it was held to be want of proper care for the conductor to expel from the train for non payment of fare a woman "accompanied by her sister and two infant chil-dren, in a swamp of a river, in a strange land, on a cold, dark night, where she could get no shelter except with negroes;" and that under such circumstances plaintiff walked several miles back to a place of safety, was a natural and proper act on her part.

In Texas & Pacific Railway Company v. Cole, 66 Texas, 562, it was held that where an ejected passenger at a place where, upon inquiry, she would probably have found comfortable lodg-ings, she should have made the effort to get such protection, and that the railway company was not liable for injury caused by her walking a long distance to her destination at night.

In each of these cases the passenger was without fault. Each had a ticket and was on the train by mistake of the rail-road officials. The locality, its surroundings, the night time and the condition of the weather were considered in order to determine whether the railroad officials were in fault in eject-ing from the train; the inquiry being as to the safety of the passenger at the time and place. In the Gilbert and Devainey cases it was held that proper care indicated that the passenger should have been carried back or to a safer place. In this case

the deceased was in the nighborhood where he had passed his
life. Houses were near and there is no evidence of inclemency
of the weather. While there was no station house or ticket
office, yet passengers got on and off the train at the place. It
was early in the night, and as in the Cole case, no reasonable
doubt exists, or is shown by the testimony, but that deceased
could have had shelter for the night had he sought it. Unless
there was that in his condition imposing an extraordinary
care as a duty upon the railroad officials, they had used proper
care when they left deceased, if they did, in a place safe in
its surroundings. The deceased was wrongfully on the train—
against the rules of the railroad company, and without the
knowledge or consent of the conductor. The brakeman, Gillis,
thought him one of the gang of woodchoppers employed upon
the train and did not know otherwise until after leaving Oak-
woods. He was left where, with ordinary care on his part,
he was in no danger.

Our courts have held that "drunkenness, to afford a ground
for avoiding a contract, must be so excessive as to render the
person incapable of consent or for the time to incapacitate him
from exercising his judgment." (Reynolds v. Dechaumes, 24
Texas, 175.)

Voluntary intoxication is no excuse or justification for the
commission of an act against the criminal laws committed
when in that condition. In Houston & Texas Central Railway
Company v. Sympkins, 54 Texas, 615, it was held that if the
plaintiff when run over and injured was in a state of intoxi-
cation "such conduct was contributory negligence." A like
rule was intimated in Railway v. Smith, 52 Texas, 178.

In Thompson on Negligence, volume 1, page 450, the rule is
stated "that if a trespasser by his own act deprive himself of
the exercise of his faculties, as for example by falling asleep
or being drunk upon the track, such conduct is contributory
negligence which constitutes a bar to his action for damages"
(citing authorities to which we do not have access).

In Wharton on Negligence, section 308: "An insane person
is therefore distinguishable from a drunkard by the fact that
with the former incapacity is involuntary while in the latter
it is voluntary, and hence a drunkard may be guilty of con-
tributory negligence by getting drunk before putting himself
in a position of danger in which he receives injuries from
which had he been sober he would have escaped."

Again, citing from Beech on Contributory Negligence, 391: "When contributory negligence is in issue it must appear that the plaintiff did not exercise ordinary care and that too without reference to his inebriety or he may have his action. The question is whether or not the plaintiff's conduct came up to the standard of ordinary care, not whether or not the plaintiff was drunk. As sober men are frequently careless and guilty of negligence, so it very occasionally happens that drunken men are careful and prudent, or if negligent that their intoxication cut no figure in the matter. From which the law infers that there is no proper and necessary connection between sobriety and carefulness nor between inebriety and negligence."

Following the weight of authority, it would seem the railway company would only be liable for wanton or wilful neglect on the part of its employes toward the deceased of the duty of caring for his safety if he was intoxicated, even to the extent of insensibility. It can not be conceded to one incapable of protecting himself from the voluntary use of intoxicants that by entering upon a train from which he is forbidden, and without the knowledge or consent of the conductor, that thereby he can impose upon the railway company any duty beyond ordinary care to protect him from injury while upon the train and to leave him in a reasonably safe condition. The appellant insists, and not without reason, that instead of excusing want of proper care the intoxication was a continuing fact evidencing negligence, if not negligence in itself, without which the injury would not have happened.

If, as it seems to be, that voluntary intoxication to the extent of insensibility is chargeable as negligence when contributing to the injury, it would follow that a less degree of, or partial intoxication would not excuse or dispense with the duty of self protection by proper care to avoid danger. The term partial intoxication is used as descriptive of the condition of the deceased, as his mental condition is indicated by his actions, as it appears from the testimony. His entry upon the train at Oakwoods—his proposal to pay his way when he was discovered not to belong to the wood chopper's gang—his referring to his friends at Palestine—his descent from the tender when ordered—his effort to board the train when starting at Long lake tank—his movement from the tank in direction he

24

had spoken of going—his careful avoiding danger when meeting the second train, and his continuing five hundred yards from the tank toward Palestine were voluntary and rational acts by no means denoting more than partially a condition of drunkenness.

The refusal to give the charge first asked without qualification was error.

The second charge refused was defective, and its refusal was not improper, yet the latter part of it might and should have been given to the jury. There can be no doubt but that the verdict was induced by the charge as given.

The question of care or want of it on part of the employes controlling the train that ran upon the deceased causing his death was not passed upon by the jury.

For the reasons that the degree of care given in the charge as the duty of the defendant company toward the deceased was higher and more onerous than the law requires in like circumstances, and for the further reason that mental incapacity occasioned by intoxication was held to excuse the deceased from any care whatever for his safety, the judgment below must be reversed.

The issues of fact for the jury upon a new trial will be negligence or not upon the railway company, and care, or want of it, on part of the deceased, and the duties of each to be defined as above; that is, without regard to whether deceased was drunk or sober.

                                  *Reversed and remanded.*

Opinion delivered October 12, 1888.