PARIS & GREAT NORTHERN RAILROAD COMPANY v. MRS. ANNA ROBINSON ET AL.

No. 2168.     Decided November 15, 1911.

**1.—Carriers—Care of Drunken Passenger—Negligence.**

To be "drunk" is a term of indefinite meaning, covering all degrees of mental and physical impairment by intoxicants, whether or not of such extent as to require the exercise of care by a carrier to prevent the passenger from injuring himself by his own acts.     (Pp. 485-487.)

**2.—Same—Charge.**

An instruction in the case of an intoxicated passenger killed by falling from the platform of a moving train, was erroneous in asserting defendant's liability if its employees, seeing that he was "drunk," knowingly permitted him to go out of the cars into a dangerous position on the platform, the evidence leaving it at least an open question whether his condition was obviously such as to call for interference for his protection.     (Pp. 485-487.)

**3.—Same.**

The duties of a carrier towards an intoxicated passenger and the extent to which the obligation to control his actions for his protection from danger will be recognized, considered and discussed.     (Pp. 487-492.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Lamar County.

Mrs. Robinson and others sued the railway company and recovered judgment. Defendant appealed, and on affirmance obtained writ of error. The case on former appeal is reported in 53 Texas Civ. App., 12.

*Andrews, Ball & Streetman, Wright & Patrick* and *W. F. Evans,* for plaintiff in error.

There is no evidence in the record warranting a finding that deceased was in a state of intoxication incapacitating him from realizing and appreciating the danger of being on the step of a fast moving train. Railway Co. v. Evans, 9 S. W., 325; Thixton v. Railway Co., 96 S. W., 548; Louisville & N. R. Co. v. Logan, 10 S. W., 655; Galveston, H. & S. A. Ry. Co. v. Long, 36 S. W., 486; Korn v. Railway

Co., 62 C. C. A., 417; Roseman v. Railway Co., 112 N. C., 709; Railway Co. v. Robinson, 53 Texas Civ. App., 12.

There is no evidence to support the finding of the court that the porter saw Robinson on the steps of the car or knew that he was incapacitated and could not realize danger, or that the porter ever saw Robinson in a dangerous position or place. Roseman v. Railway Co., 112 N. C., 709; Graham v. McNeill, 43 L. R. A., 300; Hutchinson on Carriers, (3d ed.), sec. 1197; Railway Co. v. Garner, 115 S. W., 273; Railway Co. v. Cruse, 96 S. W., 821; Texas & P. Ry. Co. v. Overall, 18 S. W., 142; Railway Co. v. Porter, 11 S. W., 324.

There was no evidence that defendant was guilty of negligence proximately causing the injury. Denison & S. Ry. Co. v. Carter, 82 S. W., 782.

There was no evidence that Robinson was intoxicated to such an extent as to render him helpless or incapable of taking care of himself, or incapable of appreciating the danger to himself in occupying a position on the platform of the car, and, unless he was intoxicated to such an extent as to render him incapable of realizing the danger of his position, the danger was apparent to him as it was to the employees of the carrier, and they owed him no duty to prevent him from assuming the position he did. Ebert v. Gulf, C. & S. F. Ry., 49 S. W., 1105; Hawkins v. Railroad, 83 S. W., 52; Walling v. Trinity & B V. Ry. Co., 106 S. W., 417; Houston & T. C. Ry. Co. v. O'Donnell, 92 S. W., 409; Paris & G. N. Rd. Co. v. Robinson, 114 S. W., 658.

The extent of Robinson's intoxication and his capacity or incapacity at the time of his injury was a matter of fact to be submitted to the jury, and there was evidence that he was not at any time incapable of caring for himself. If the jury so found, under the law the defendant did not owe him any higher degree of care than it did any other passenger, and, if his condition caused him to be reckless or indulge in risks that he otherwise would not have taken and caused his injury the defendant would not be responsible. Paris & G. N. Rd. v. Robinson, 114 S. W., 658; Missouri Pac. Ry. v. Evans, 71 Texas, 371; Reynolds v. Dechamus, 24 Texas, 175; Houston & T. C. Ry. v. Sympkins, 54 Texas, 615; Houston & T. C. Ry. v. Smith, 52 Texas, 178; Louisville & N. Ry. Co. v. Logan, 10 S. W., 655; Galveston, H. & S. A. Ry. v. Long, 36 S. W., 486; St. Louis, A. & T. H. Ry. Co. v. Carr, 47 Ill. App., 353; Fisher v. West Virginia & P. R. Co., 39 W. Va., 366; Milliman v. N. Y. C. & H. R. Co., 66 N. Y., 643; Roseman v. Carolina Cent. R. Co., 112 N. C., 709.

*Allen & Dohoney* and *B. B. Sturgeon,* for defendants in error.— There was evidence tending to show that deceased was drunk, that appellant's employees knew he was drunk, and that they knowingly permitted him to go out on the platform and stand on the steps of the car while running at such speed as would make it dangerous for a man in his condition. The court, in the fourth paragraph of his charge, properly submitted these issues to the jury. Paris & G. N. R. R. Co. v. Robinson, 114 S. W., 662; Fox v. Railway Co., 138 Mich., 423, 68 L. R. A., 336; Wheeler v. Railway Co., 70 N. H., 607, 54

L. R. A., 955; Johnson v. Railway Co., 104 Ala., 241, 53 Am. St. Rep., 42; Hutchison on Carriers, sec. 637.

It is the duty of a carrier to protect a passenger against his own negligence if the danger be discovered. And, even though Robinson may not have been so drunk as to be insensible or incapable of protecting himself, if he was discovered by appellant's employees in a drunken condition upon the steps or platform while the train was running at such speed as would make it dangerous to one in his condition, appellant owed him the duty to at least make some effort to protect him from injury. Railway Co. v. McClain, 80 Texas, 98; San Antonio Ry. Co. v. Watzlavzeck, 28 S. W., 116.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This is an action by Mrs. Anna Robinson in her own right and as next friend of her minor children, Winnie and William Robinson, to recover damages in the sum of Twenty-five Thousand ($25,000) Dollars, against the Paris & Great Northern Railroad Company in the District Court of Lamar County, for the alleged negligent killing of W. I. Robinson on November 2, 1905, the husband and father of plaintiffs respectively.

As grounds of negligence on the part of the defendant, the plaintiffs alleged that the said W. I. Robinson on November 2, 1905, in Paris, Texas, "got aboard one of defendant's cars as a passenger to go to Hugo, then Indian Territory, now the State of Oklahoma," and that when he boarded said train he was in such a state of intoxication as to be incapable of protecting himself against dangers ordinarily incident to railroad travel, and that Robinson's condition was known to the employees of defendant. That while defendant's train was running at a high rate of speed the said Robinson, in his intoxicated condition, was permitted to go out onto the platform of the defendant's car and take a position on the platform and steps, and while thus riding the said Robinson was thrown or fell from said moving train and was killed. It was also alleged that defendant's servants knew that Robinson was in said dangerous position and that he was too drunk to realize his peril or to protect himself from the danger incident to his said position, and that defendant's servants knowing the danger the said Robinson was in did nothing to warn him of his danger or to protect him from injury. It was also alleged as a ground of negligence that defendant's cars were not provided with guard rails, gates or other protection, to prevent passengers from falling from the platform.

The defendant answered by general demurrer, general denial and specially pleaded that on the day alleged in plaintiff's petition the said W. I. Robinson purchased a ticket at Paris, Texas, to Hugo, I. T., and boarded defendant's car in company with a friend, and that a comfortable seat was furnished him in defendant's car where he was perfectly safe. That the conductor on defendant's train took up the ticket of said Robinson, and that while it was noticeable that he was or had been drinking intoxicants, yet he was perfectly rational and fully able to take care of himself and was on a seat with a friend who had been with him in Paris and in whose care he seemed to be. That while defendant's servants were in the discharge of their several duties

in taking up tickets and looking after various things required of them in managing and running said train, the said Robinson, without the knowledge or consent of defendant's servants, in charge of said train, "left his seat within the car and passed out of said car and went upon the platform of same and took position on the steps of the car with his hands holding to the handhold and his body inclined from the car; that all during this time the car and train to which it was attached, was in motion; that about the time the train reached Lenoir, a small flag station of the defendant's, the said W. I. Robinson either jumped or fell from said steps and in the fall struck on a switch target near the track nearly severing his head from his body and instantly killing himself." It was also specially pleaded that the seat furnished the said Robinson and which he was occupying was a safe one and if he had remained therein the injury would not have occurred; that neither the platform nor the steps of the car are for the accommodation of passengers save as a mode of ingress and egress to and from the car; that they are places of obvious danger and that it is contrary to the rules of the defendant for passengers to ride on either, which was well known to said W. I. Robinson, or by the exercise of ordinary care could have been known to him; that such notice was posted in the car in large letters in a conspicuous place that passengers were not permitted to ride on the platform.

The case was tried by a jury and a verdict rendered for plaintiffs for $7,000, which was duly apportioned between them. The case having been appealed to the Court of Civil Appeals, Sixth District, by which court the judgment of the lower court was affirmed, is before this court upon writ of error.

There are a number of questions raised by the defendant in its brief, but in view of the disposition this court has thought proper to make of the case, it will not be necessary to discuss all of such questions, as it seems no useful purpose could thereby be subserved. The main questions upon which we have determined to dispose of the case relate to the court's charge and the sufficiency of the evidence. The trial court submitted the case to the jury upon the theory that if they found from the evidence that the deceased being a passenger on defendant's train was "drunk" and that defendant's servants knowing his condition knowingly suffered him to go out upon the platform of its car while the train was running at such speed as would make it dangerous for him, being "drunk," to stand on the platform or on the steps of the car, and that he fell or was thrown from the platform or steps, they would find for the plaintiffs. This charge was given without allegation or proof of any other specific act of negligence on the part of defendant than permitting deceased to occupy the obviously dangerous position he had voluntarily assumed and in consequence of which he fell from the train and was killed. To have thus instructed the jury was, in our opinion, error.

No qualification of the term "drunk" was given the jury by which the rule fixing the liability of carriers for a lack of exercising its guardianship over drunken passengers is limited to those who have been accepted as passengers in a state of drunkenness or intoxication to such an extent as they are not capable of taking care of themselves,

or who are incapable of appreciating the danger liable to follow their acts.

The term "drunk" is synonymous with the word intoxicated, and is of varying degrees. This was recognized by the learned Chief Justice of the Court of Civil Appeals when this case was first before that court (Paris & G. N. Ry. Co. v. Robinson, 53 Texas Civ. App., 12), in the following language: "Intoxication is of varying degrees. A person so under the influence of liquor as not to be entirely at himself is intoxicated, yet he may not betray it by either movement or word and his condition may not be discernable by his intimate friends. It would hardly be contended that as to such person the carrier must resort to other than the ordinary means for his safety. Again, a person may be 'staggering drunk' and yet be capable of transacting with intelligence important business, and with great foresight providing, under given circumstances, for his own safety and comfort."

That the term "drunk" is not a well defined term either in law or in the common acceptation of the meaning of the word, is found in the fact that all the standard dictionaries make its meaning synonymous with the word "intoxicated." The fact that the term "drunk" or "intoxicated" is a term of varying degrees is recognized in that standard authority, Words & Phrases, volume 3, page 2208, as follows: "There are degrees of intoxication or drunkenness. A man is said to be 'dead drunk' when he is perfectly unconscious—powerless. He is said to be 'stupidly drunk' when a kind of stupor comes over him. He is said to be 'staggering drunk' when he staggers in walking. He is said to be 'foolishly drunk' when he acts the fool. All these are cases of drunkenness, of different degrees of drunkenness. So it is a very common thing to say a man is 'badly intoxicated,' and again that he is 'slightly intoxicated.' There are degrees of drunkenness and therefore many persons may say that a man was not intoxicated because he could walk straight; he could get in and out of a wagon. Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated; although he can walk straight. Although he may attend to his business, and may not give any outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be himself, so as to be excited, and not to possess that clearness of intellect and control of himself that he otherwise would have, he is intoxicated."

In the latest Webster's International Dictionary, the term, drunk, is thus defined: "Intoxicated with or as with strong drink; under the influence of an intoxicant, especially an alcoholic liquor, so that the use of the faculty is materially impaired."

In Bouvier's Law Dictionary, Rawle's revision, the term is defined as, "the condition of a man whose mind is affected by the immediate use of intoxicating drinks," and the same author proceeds in his discussion of the meaning of the term drunk or drunkenness to say: "This condition presents various degrees of intensity, ranging from a simple exhiliration to a state of utter unconsciousness and insensibility. In the popular phrase, the term drunkenness is applied only to those degrees of it in which the mind is manifestly disturbed in its operation. In the earlier stages it frequently happens that the mind is not

only not disturbed, but acts with extraordinary clearness, promptitude and vigor."

It seems clear that the term, drunk, as ordinarily understood is a term susceptible of varying degrees, and the charge of the court authorized the jury to find for the plaintiff if they believed from the evidence that W. I. Robinson was drunk and met his death under the other circumstances heretofore mentioned as composing the substance of the court's charge. An approval of this charge would be an approval of the doctrine in this State that the carrier is required to exercise greater care, caution and protection for passengers who are voluntarily drunk or intoxicated, than for those passengers who are sober and orderly, and that without consideration as to the degree of intoxication, whether it has reached the stage of hilarity, the height of generating the dare devil spirit, or producing incapacity of selfcare, or insensibility of those acts that menace limb and life. To such a rule this court can not subscribe.

No precedent that we have been able to find in this State recognizes the rule as laid down by the charge of the learned trial judge otherwise so admirably drawn, and we are not able to appreciate the soundness of the wisdom or policy that would be exercised by so extending the rule as we understand it to now be in this State.

We think the rule in this State is, with reference to the duty of the carrier of intoxicated persons accepted for transportation, and where such persons are injured or killed, that in order to deny the effect of the plea of contributory negligence, it should be required of the person seeking such recovery to show that the intoxicated person so injured or killed was so intoxicated as to be mentally or physically incapable of protecting himself from danger, or of appreciating the danger to himself as a consequence of his acts and that this condition was known to the agent and servant of the carrier through whose negligence the injury or death is alleged to have resulted.

We approve the rule on this subject as stated by Hutchinson on Carriers, third edition, section 1230, as follows: "The mere fact that the passenger is intoxicated will not, as we have seen, justify the carrier in excluding him from his conveyance, so long as he conducts himself in a quiet and peaceable manner. Nor will intoxication excuse a carrier from liability for injury to the passenger by negligence, or justify the exposure of the passenger to danger. Intoxication does not *per se* constitute contributory negligence, but is a matter to be taken into consideration as bearing on the question whether the passenger has, by his own conduct, brought the injury upon himself. The law exacts from one who is voluntarily intoxicated the same degree of care and caution in avoiding an exposure of his person to danger as it exacts from a sober person of ordinary prudence under like circumstances. If intoxication renders the passenger indifferent or thoughtless, and, in consequence, he fails to exercise ordinary care to protect himself from danger, and is injured, it will be no excuse to him that his failure to do so was superinduced by a state of intoxication. . . . So where the authorized agents of a carrier accept an unattended person as a passenger with knowledge that he is so intoxicated as to be

mentally and physically incapable of protecting himself from danger, the question of contributory negligence can not arise."

In the case of Houston & T. C. Ry. Co. v. Bryant, 31 Texas Civ. App., 483, Judge Fly held that although, "Will Bryant" (for whose death damages were being sought) "may have acted with reasonable prudence in taking his position upon the platform of the car, still if, after assuming that position, his intoxication caused him to fall from the platform, such drunkenness would be proximate cause of his death, and his wife and parents could not recover damages."

In the case Ebert v. Gulf, C. & S. F. Ry. Co., 49 S. W., 1105, the plaintiff sued the railroad company for damages. The facts in that case show that Ebert was a boy fifteen years old and that he stepped out on the platform of the car while the train was going at a high rate of speed, and was riding on the platform in the presence of the train porter, and falling from the train while riding in this position, was injured. Upon the principle that the danger of the position assumed by the plaintiff in that case was as apparent to the plaintiff as it was to the defendant's servants, and that plaintiff and the porter "being equally cognizant of the danger, no duty devolved on the porter to warn him," the plaintiff in the case above cited was denied the right of recovery, the decision having been rendered by Mr. Chief Justice James of the Fourth Court of Civil Appeals, upon the theory of contributory negligence. The same principle laid down in the foregoing case is that laid down in the text books. Wharton on Negligence, section 208, states it in this language: "A drunkard may be guilty of contributory negligence by getting drunk before putting himself in a position of danger in which he receives injuries from which had he been sober he would have escaped."

Patterson Railway Accident Law, section 76, thus states the principle: "The fact that the person injured is intoxicated at the time of the injury will not relieve him from the legal consequences of his contributory negligence."

1 Thompson on Negligence, section 340, states the same principle in the following language: "Voluntary intoxication can not be pleaded to avert the consequences of one's own negligence."

It is insisted, and we are referred to a number of authorities in support of the proposition, that the rule in this State with reference to the liability of carrier for injuries occurring to its passengers who are intoxicated is that the carrier "would only be liable for wanton or willful neglect on the part of its employees towards the deceased of the duty of caring for his safety if he was intoxicated, even to the extent of insensibility." This rule seems to have been announced in the case of Missouri Pac. Ry. Co. v. Evans, 71 Texas, 367, 1 L. R. A., 476, but it will be observed that the doctrine there stated was applicable to the peculiar facts of that case, in which the deceased was wrongfully on a freight train and not a passenger of the railway company. So that in none of the Texas authorities has the rule been approved that the extent of the care of the carrier towards passengers who are intoxicated to the extent of being incapable of taking care of themselves, or incapable of realizing the danger of their acts, is limited to wanton or willful neglect. All of those cases with which we are

familiar where that rule seems to apply are those cases in which the intoxicated person was either a trespasser or a licensee only. This is true of the cases of Missouri Pac. Ry. Co. v. Evans, 71 Texas, 367, 1 L. R. A., 467; Houston & T. C. Ry. Co. v. Smith, 52 Texas, 185; Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 623, 38 Am. Rep., 632; Houston & T. C. Ry. Co. v. Waller, 56 Texas, 331.

While we approve the rule of "wanton or willful neglect" toward those who are injured by the carrier, while drunk, even to the extent of insensibility, we think it should be confined to those in that condition who are either trespassers or mere licensees, and not to those who are passengers. With regard to passengers a different rule must apply as it has been heretofore stated. Such is dictated by considerations of humanity. The weakness of human nature that permits the appetite for intoxicants to be excessively indulged by men is as much a natural deformity as the man born with weak mentality, or defective sight or hearing, and whenever such person becomes intoxicated to the extent that he is incapacitated mentally and physically to care for himself, or rendered incapable of understanding or appreciating the danger incurred or produced by his acts it devolves upon the servants of the carrier when the condition of such person is known to them, to use the same care and precaution for his protection as is required of them in cases where the passenger has defective sight or hearing, or is so mentally weak as to be unable to care for himself or to understand the natural consequences of his acts.

Counsel for plaintiffs below, in their brief, submit the following proposition upon which they rely for a recovery: "There was no issue made by the evidence as to deceased having been drunk to the point of insensibility and incapacity, and the court properly did not submit such issue to the jury. There was evidence tending to show that deceased was drunk, that appellant's employees knew he was drunk and that they knowingly permitted him to go out on the platform and stand on the steps of the car while running at such speed as would make it dangerous for a man in his condition. The court, in the fourth paragraph of his charge, properly submitted these issues to the jury, and instructed them, if they found such facts from the evidence and such conduct on the part of appellant's employees was negligence from which the accident resulted, to find for appellant."

The fourth section of the court's charge is that part of the charge referred to in the beginning of this opinion, and it will be unnecessary to quote it here.

In support of the foregoing proposition we are referred by counsel for plaintiffs below to the following authorities: Fox v. Railway Co., 138 Mich., 433; Wheeler v. Railway Co., 70 N. H., 607, 54 L. R. A., 955; Johnson v. Railway Co., 104 Ala., 241, 53 Am. St., 39; Hutchinson on Carriers, sec. 637. The case of Fox v. Railway Co. was a suit for damages for personal injuries alleged to have been received by plaintiff in stepping from defendant's train while it was running at a rapid rate of speed. He claimed to have been "beastly drunk" and that defendant's servants, knowing his condition, negligently permitted him to go out on the platform and step from the moving train. The difference between that case and the one at bar is that Fox was "beastly

drunk," and defendant's servants were warned not to suffer the plain-. tiff in that condition to go upon the platform, from which he stepped thinking the train had come to a stop. In the case we are considering there was no proof that Robinson was beastly drunk, or drunk to insensibility or to such an extent as to be incapable of knowing what he was about. This is conceded in the proposition of plaintiff's counsel above quoted. Nor was it shown by any testimony that if Robinson's condition was such that he did not realize that he was in a dangerous position on the platform or steps of the moving train, that this was known to any servant of the railroad in charge of the train.

In the Fox case the court makes this statement: "In the case at bar it is shown beyond any reasonable question that the plaintiff, while beastly drunk, was making an effort to go from a place of safety to a place of danger. The attention of the brakeman was called to the situation by a passenger who saw the danger. Instead of going to the drunken man and attempting to prevent his exit from the car, he went in the other direction. It was not until after the passenger, seeing the failure of the brakeman to act, attempted to prevent the danger, that the brakeman made any effort in that direction. This effort came too late."

It seems as if the Fox case is in line with the rule we have laid down. It clearly does not support the proposition contended for by plaintiff's counsel.

The next case cited and relied upon by plaintiff's counsel is that of Wheeler v. Railway Co., *supra,* from New Hampshire. That was a case where plaintiff was drunk and was permitted to dance and stagger in the baggage car with the door wide open and in front of the open door. His condition was known to defendant's servants, and that he was incapacited to take care of himself. The trial court in that case charged the jury as follows, which charge was approved by the Supreme Court of New Hampshire, and which we think is in perfect accord with the rule laid down in this opinion: " 'When a man in his senses exposes himself voluntarily to apparent danger, he is not in the exercise of that care which the law makes it the duty of every man to take to prevent injury to himself; and drunkenness will not relieve the plaintiff from the exercise of the care required of people in general. But, while drunkenness will not excuse the exercise of due care on the plaintiff's part, still, if the plaintiff was so completely under the influence of liquor or so drunk at the very time of the accident that he was irresponsible, or incapable of caring for himself, and the defendant knew of his condition and danger in time to prevent the accident, and did not use due care to prevent it, they were in fault. In this case, while the defendants were not under obligation to accept the plaintiff as a passenger in the condition he tells you he was, still, if they did accept him when they knew he was so much under the influence of liquor that he was irresponsible, or incapable of taking care of himself, under the circumstances in which he was placed, or if they permitted him to remain on their train after they became aware of his condition, it was their duty to use due care to prevent injury to him; and due care would be the exercise of such care as a reasonably prudent man would exercise, situated in precisely similar circumstances as the

facts show you existed at the time of this accident. In this case, if the defendants knew the plaintiff's condition, and could have prevented the accident by the exercise of due care, they are in fault; but if the defendants, after they knew of the plaintiff's condition, could not have prevented the accident by due care, they are not in fault. This is predicated on the fact that you find that the plaintiff was so much under the influence of liquor that he was irresponsible, or incapable of taking care of himself.' These instructions clearly and forcibly stated the rights and duties of the parties, and the legal principles involved were repeatedly impressed upon the attention of the jury."

The case of Johnson v. Louisville & N. Ry. Co., *supra,* Alabama case, relied upon by plaintiff's counsel, does not, in our judgment, support the proposition contended for by them. In that case we quote the following from the syllabus: "Drunkenness does not exempt a person from the responsibility of his own acts; and if the intoxication renders him reckless or indifferent to consequences, and he fails to exercise due care, such failure will not be excused because superinduced by his intoxication; the law exacts from one voluntarily intoxicated the same care and precaution to avoid injury, as it does from a sober person of ordinary prudence under like circumstances."

From the view we take of the law applicable to this case it must be reversed on account of the court's charge as above indicated, and it remains to be determined what further disposition should be made of the case in reaching a correct conclusion. The testimony is conflicting as to whether or not the deceased was drunk, or only under the influence of intoxicants. The evidence tending to show that he was intoxicated to the extent of being incapable of taking care of himself, or of understanding the dangerous position he had assumed is very scant, if, indeed, there is any evidence tending to show that condition beyond the mere conclusion of some of the witnesses based upon no material fact or substantial reason. While some of the witnesses for plaintiff say the deceased "appeared to be drunk," that he talked loud, and that "it was not intelligent," that he staggered around in the car, and cursed and that he waved his hands, no one of all these witnesses for the plaintiff ever stated one word, thought or thing, that the deceased said on that occasion, although they were in a few feet of him, except that he talked loud, cursed and staggered. On the other hand, a number of witnesses for the defendant say they were on the car in which deceased entered and took his seat, that he came over to where at least two of such witnesses were and talked intelligently to them, asked them where they were going and after being told inquired of the whereabouts of several of his acquaintances, calling them by name. This testimony was undisputed. In addition to this W. B. McClanaham, a witness for plaintiffs, testified that he was a friend of the deceased, had been with him the day and night before the accident in Paris, Texas, that deceased, on the morning of the accident, came to the train by himself, requested the witness to purchase his ticket, that deceased then went off in the direction of a saloon and afterwards returned alone, and without assistance, entered the train and took a seat in the car. It never occurred to this friend of the deceased that he was sufficiently intoxicated as to demand at his hands any assistance or

caution. The condition of deceased may be stated from the uncontradicted evidence to be this: "He knew where he was going and what train to go on. He went without assistance to the proper depot in time to procure his ticket to destination. He realized it was necessary to procure a ticket and requested his friend to purchase his ticket to Hugo for him. When the train arrived, he entered the same without assistance. After entering the car he sat down by his friend. When on the train, he could see, talk, walk, and did not fall down at any time. His talk was intelligent. He was capable of caring for himself. He staggered very little more than a man ordinarily would in walking through a moving train."

After deceased went upon the platform and took his position on the steps of the car he did it by taking hold of the handhold with his right hand and securely held himself on the steps while his body was leaning out from the train as far as it would reach and was waving his left hand. In this position he was seen by the witness, Andrews, for more than a quarter of a mile before the train reached Lenoir, and after the train had passed Lenoir about 150 yards the body of deceased was found near a switch target with his head practically cut off and blood upon the switch target. By all this testimony it is clearly shown that deceased was capable of taking care of himself and realized the danger of the position taken by him on the steps, and met his death only from negligence in failing to look for and see the switch target by striking which he undoubtedly was killed. He must have been as conscious of the danger of his position as were the servants of defendant, as if it existed it was as obvious to him as to them.

There is no evidence in the record by any witness tending to show, if the deceased was intoxicated to the extent that he was incapable of taking care of himself, or of realizing the danger of his position on the steps of the car, that the porter or any other servant of the railroad company knew his condition to be such, unless it should be inferred from the fact that his condition was obvious to all who saw him or heard him talk. That this was true we are not able to say from all the testimony.

If the servants of the railroad company did not know of the extent of Robinson's intoxication and that he was so intoxicated as to be incapable of caring for himself, or realizing the danger of the position taken by him, they had a right to assume that deceased knew of any danger that existed by reason of his position on the steps, and that he would use all means to protect himself from injury.

This cause, although upon its second appeal, does not seem to have been fully developed, at least as to the extent of deceased's intoxication at the time of the accident, bringing his case within the rule here laid down, and as long as there is a probability that a case has for any reason not been fully developed, this court will not render judgment on the insufficiency of the evidence. In other words, it must be apparent to the court that the case has been fully developed, and that there is no probability that any other evidence can be secured before it will render judgment.

The judgments of the Court of Civil Appeals and of the District Court will be reversed and the cause remanded.

MR. JUSTICE RAMSEY, concurring.—I concur in the result. I find no fault with Justice Dibrell's clear statement of the law. I am not sure, however, that his analysis of the testimony does justice to the case. I am of the opinion that under a correct charge the verdict is supported by the testimony.

*Reversed and remanded.*