**WILSON et al. v. BENOIT.**

No. 9894.

Court of Civil Appeals of Texas. Austin.

June 28, 1950.

Rehearing Denied July 26, 1950.

W. M. Zachry, Douglas Boyd, Waco, Jones & Herring, Herman Jones, all of Austin, for appellants.

Coleman Gay, of Austin, for appellee.

GRAY, Justice.

Appellants, Garnitt Wilson Kerley, Carol Sue Wilson, Phyliss Jean Wilson and Robert L. Wilson, Sr., in the order named, are: the surviving wife, minor daughters, and father of Robert L. Wilson, deceased. Garnitt Wilson Kerley is joined in this suit by her present husband, Edwin R. Kerley. Appellee, Phillip Benoit, was the owner and operator of Benoit Motel, a tourist court located in the City of Austin.

This suit was brought by appellants against appellee to recover damages for the death of Robert L. Wilson, alleged to have been caused by the explosion of natural gas accumulated in the tourist cabin occupied by him.

Appellants alleged that appellee was negligent: (1) in maintaining a gas heater in the cabin occupied by Wilson which was connected by a flexible rubber and fabric hose to the gas pipe, the use of which hose was prohibited by an ordinance of the City of Austin; (2) in nailing a cover over two vents in the cabin, thereby eliminating their usefulness as ventilators, the purpose for which they were originally designed; and (3) in installing and maintaining electric wiring in the cabin, in that no character of covering was placed about the light switches which would enclose the inner part of said switches so as to prevent natural gas from coming in contact with the sparks resulting from the operation of such switches.

Appellee answered by general denial, a plea of contributory negligence on the part of Wilson by reason of "some act or conduct" on his part, and, in the alternative, that the explosion and injuries received by Wilson were the result of an unavoidable accident.

As developed at the trial, the facts show: That sometime late in the afternoon of March 22, 1947, Wilson registered as a guest with appellee and was assigned to cabin No. 22. After making a telephone call, he went to the cabin where he remained a short time and left. He returned to the cabin at about 9 o'clock p. m., parked his car in the garage adjoining the cabin, but was unable to open the door leading from the garage into the cabin and got his key hung in the lock. Wilson reported this fact to the office, appellee sent an assistant to open the door, the assistant failed in his efforts and reported back to appellee. Appellee then opened the door with a pass key, went inside, turned the light on, examined the bathroom, saw the same was in order and left, leaving Wilson in the cabin.

In answer to a question as to whether or not he made an inspection of the heater and rubber hose at the time he showed Wilson into the cabin, appellee said: "I didn't make any inspection right at the time I showed him the cabin, no, but I have cleaned the cabin myself, I would say around 11 o'clock or 12 o'clock, or something like that, and then inspected the stove to see whether it was on or off, because we do have customers that leave the stove on when they check out in the morning, I believe."

He further said he did not light the heater because it was too warm "to have a stove in the house lit."

It was shown by an employee of the United States Weather Bureau that the temperature from 8 p. m. on March 22nd to 8 a. m. on March 23rd, ranged from a high of 67 to a low of 64 degrees. Appellee said he did not have a fire in his office on the night of March 22nd.

When Wilson returned to the cabin at about 9 o'clock p. m. on March 22nd, he

was in an intoxicated condition, and, at that time, had a pint whisky bottle in his pocket.

Appellee maintained a natural gas heater in cabin 22 for the comfort of his guests. Gas to this heater was supplied by means of a pipe leading into the cabin and there was a jet or cut-off on the pipe where it ended near the wall of the cabin; the heater was connected to this jet or cut-off by a flexible rubber and fabric hose about 14 inches long with rubber tips on each end, one of which was pushed on the wall cut-off and the other on the cut-off at the heater. Apparently the gas could be cut off by using either the cut-off on the heater or the cut-off at the wall.

With this statement of the evidence, events and happenings up to 9 o'clock p. m. on March 22nd, the evidence closes and nothing is known of the acts and conduct of Wilson and the happenings and occurrences within cabin 22 until the morning of March 23rd, at about 7 o'clock a. m., when an explosion occurred which wrecked the cabin, set its contents on fire and inflicted injuries on Wilson from which he died at 3 o'clock p. m. on that day.

Appellee said that at about 7 o'clock a. m. on March 23rd he was awakened by an explosion and, upon looking out, he saw fire coming from cabin 22. He first called the fire department, asked them to call an ambulance, then slipped on some clothes and ran to the cabin. There he found Wilson standing in the bathroom, the cabin was badly wrecked and there was fire. At the time appellee reached the cabin a Mr. Smith and a Mr. Dupree were inside and others were on the outside, the police and firemen were also there. Further identification of these parties is not clear. Smith and Dupree did not testify. Wilson was screaming and was first taken to the court's office and then to the hospital. Approximately 95 per cent of his body was burned, about 70 per cent was third degree burns and about 25 per cent second degree. Wilson remained conscious until about thirty minutes or an hour before he died at 3 o'clock p. m., March 23rd.

Before he was taken to the hospital Wilson said he bought a paper and was going to read and when he turned on the light the explosion occurred, and while in the emergency room at the hospital he said as he flipped the light switch there was an explosion.

It is not shown who was the first person to enter cabin 22 after the explosion, but appellee said when he got there the hose was disconnected from the wall cut-off, that the jet was turned off, and that the hose was connected to the heater. There was testimony that a test was made of the hose connected to the heater and that it showed no leaks.

The cause was submitted to a jury on seventeen special issues, and the jury found:

By issue one: That the use of the flexible rubber and fabric hose was a proximate cause of the explosion and the resulting injuries and death of Wilson.

By issue two: That there was not a cover nailed over the vent in the ceiling of cabin 22.

Issue three: That the nailing of covers over the two vents in cabin 22 was not negligence.

Issue four: That such negligence, if any, was not the proximate cause of the explosion, injuries and death of Wilson.

Issue five: That the explosion, injuries and death of Wilson was not the result of an unavoidable accident.

Issue six fixed Garnitt Wilson Kerley's damage at $3,000.

Issues seven and eight fixed the amount of the damages suffered by Carol Sue Wilson and Phyliss Jean Wilson at $5,000 each.

Issue nine fixed Robert L. Wilson, Sr.'s damage at $600.

Issue ten found the amount of hospital, doctor, nurse and funeral expenses to be $600.

Issue eleven found Wilson did not disconnect the rubber hose from the gas jet at the wall.

Issues twelve, thirteen and fourteen were conditionally submitted on an affirmative answer to eleven, and were not answered.

By issue fifteen the jury found Wilson was in an intoxicated condition during the

time he occupied cabin 22 on March 22nd and March 23rd.

By issue sixteen that such intoxicated condition was negligence; and

By issue seventeen that such intoxicated condition was a proximate cause of the explosion and the resulting injuries to Wilson.

Upon these findings by the jury, the trial court rendered judgment denying appellants any recovery.

Appellants here complain that the trial court erred in submitting issues fifteen, sixteen and seventeen to the jury, and further erred in overruling their motion to disregard the jury's answers to said issues and to enter judgment for appellants on the remaining findings by the jury.

 In connection with issues fifteen, sixteen and seventeen the jury was not asked to find, there is no finding, and, in fact, no evidence of any act, omission, or conduct on the part of Wilson from the time appellee left him in cabin 22 on the night of March 22nd until he switched on the light the next morning. We think then the answer to issue fifteen has support in the evidence, but issues sixteen and seventeen do not. In this state of the record it must be presumed that Wilson exercised ordinary care for his own safety, and the burden was on appellee to overcome that presumption by competent evidence. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481.

 The intoxication of Wilson, standing alone, is not sufficient to convict him of negligence. His intoxicated condition was evidence, properly admitted, on the issue of his conduct, but the law is that negligence is made to depend on the acts or omissions of the person, and must be determined from the doing of some act or the failure to do some act, that a reasonably prudent person would not have done, or would have done, under the same or similar circumstances. (It is not here contended that Wilson was so intoxicated as to render him incapacitated either mentally or physically.) The mere voluntary intoxication of a person is not negligence per se; it neither deprives the person of the protection of the law nor exempts him from its penalties, but his conduct is measured by that of a reasonably prudent person under the same or similar circumstances. Paris & G. N. Ry. Co. v. Robinson, 104 Tex. 482, 140 S. W. 434; Missouri K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S.W. 1058; 45 C.J., p. 997, Sec. 551, 65 C.J.S., Negligence, § 143; 39 Am.Jur., p. 883, Sec. 203.

 The evidence shows that Wilson was intoxicated at the time he entered the cabin, but the only evidence as to any act of his while there is that the next morning he turned on the light switch. We are, therefore, of the opinion that Wilson's intoxication is not shown to have contributed to his injuries and would not defeat appellants' right to recover damages for his death. St. Louis, S. F. & T. Ry. Co. v. Morgan, Tex.Civ.App., 220 S.W. 281, affirmed Tex.Com.App., 239 S.W. 607.

Appellee has filed a counter point whereby he complains that the trial court erred in submitting issue one because there was no evidence justifying the submission of the issue. He argues that the evidence fails to show: (1) that the gas was ever turned on at the wall to permit it to flow into the hose; and (2) that any gas escaped from the hose or loose connections.

 The facts and circumstances before the jury are: Enough gas escaped into the cabin to explode when Wilson turned on the light switch; the only way that gas was furnished to the cabin was through the pipe that ended at the wall jet or cut-off; the gas was carried from the wall jet by the hose, the connection being made by pushing one rubber tip of the hose onto the wall jet and the other onto the cut-off on the heater; appellee inspected the heater at about 11 or 12 o'clock of March 22nd, to see whether it was on or off, but made no mention of an inspection of the wall jet. After the explosion the hose was tested—one end was connected to the heater and it was loose from the wall jet—as so connected it was found to be without leaks; however, no test was made of the hose with it connected to the wall jet to determine whether or not there was a leaky connection with

the wall jet, and, in fact, no such test could have been then made to test this connection as it existed prior to the explosion, because the hose was off when first noticed after the explosion and it would not be possible to determine whether the hose was last on the wall jet tight or loose. The night was warm and there was hardly any occasion why Wilson would have lighted a fire or turned the gas on. The jury found, by answer to issue eleven, that Wilson did not disconnect the hose. Issue eleven was a defensive issue and there was a burden on appellee to produce some evidence to justify an affirmative answer thereto. We think, however, there was some evidence to support the negative answer which is material and relevant to issue one. The force of the explosion blew the doors of the cabin loose from their hinges, cracked the walls, and blew off a portion of the north wall of the cabin, and did other damage to the cabin and its contents. From such evidence, we think, a legitimate inference could be drawn that the force of the explosion moved the hose and caused it to come loose at its weakest connection.

■ The presence of gas in the cabin in an amount sufficient to explode is conclusively shown by the fact that it did explode when the light switch was turned on. The only inlet for gas into the cabin was by way of the pipe that ended at the wall jet; the tests made showed there were no leaks in the hose with one end connected to the heater. All the facts exclude any probability that gas escaped at places other than where the hose connected with the wall jet. We think issue one was raised by the evidence and that the jury's answer thereto is supported.

■ While appellee was not an insurer of Wilson's safety, his liability did extend to the injuries sustained by him by reason of his being placed in an unsafe cabin. Crockett v. Troyk, Tex.Civ.App., 78 S.W.2d 1012, Er.Dis. The gas, the heater, the hose and its connections were used by appellee for the comfort of his guests and in his business of operating a tourist court, it was therefore his duty to use ordinary care to maintain and furnish the same in a safe and suitable manner. Monfort v. West Texas Hotel Co., Tex. Civ.App., 117 S.W.2d 811, Er.Ref.

We think a consideration of the foregoing facts and circumstances lead to the inevitable conclusion that the gas escaped at some time prior to the time that it was turned off at the wall; that the rubber and fabric hose permitted it to escape, and, therefore, the use of the hose was a proximate cause of the explosion and the resulting injuries and death of Wilson.

Soon after the explosion occurred, appellant Garnitt M. Wilson Kerley (then the wife of Wilson) was notified at Waco. She and Joe Duke came to Austin and reached Wilson's room at about 11 o'clock a. m., March 23rd.

Mrs. Kerley, in the jury's absence, was asked and answered as follows:

"Q. Mrs. Kerley, will you state what Mr. Wilson stated to you with reference to what had occurred immediately prior to his injury? A. Yes, sir. We talked a good bit before that, before I had asked him what happened. I said, 'Rob, what happened?' and I asked him if he struck a match to light a cigarette, and he said, 'No,' and I said, 'What took place and what happened?' He said, 'Before I went to bed, I smelled gas, and' he said, 'cut the stove off, and the next morning when I woke up to go to the bathroom, I smelled gas, and I cut the jet off at the wall,' and he said, 'I went to the bathroom and was going to read the paper,' and he said, 'When I turned the light on there was just a big flash,' is what he told me."

This answer was offered as a part of the res gestae. The testimony of Joe Duke, who heard the statement made, was also offered. On objection of appellee the trial court excluded it, and appellants complain this was error.

In view of the disposition we make of this appeal and the fact that the statement was excluded by the trial court, a further consideration of the point would not detract from or add to our conclusion, for which reasons we pretermit a further discussion of the question presented.

For the reasons stated, the judgment of the trial court is reversed and judgment is here rendered for appellants in the respective amounts found by the jury in their answers to issues six, seven, eight, nine and ten, supra.

The judgment of the trial court is reversed and judgment is here rendered for appellants.

Reversed and rendered.