Bernard I. NOVY, Appellant,

v.

EMPLOYERS CASUALTY COMPANY,
Appellee.

No. 12402.

Court of Civil Appeals of Texas,
Austin.

April 14, 1976.

Rehearing Denied May 5, 1976.

Jay S. Fichtner, Toby L. Gerber, Berman, Fichtner & Mitchell, Dallas, for appellant.

Damon Ball, Groce, Locke & Hebdon, San Antonio, for appellee.

SHANNON, Justice.

Appellant, Bernard I. Novy, sued appellee, Employers Casualty Company, on its homeowner's insurance policy in the district court of Travis County. Novy sought a recovery of $18,673.00 for losses suffered from an alleged burglary of his house. After trial to a jury, the district court entered a take nothing judgment. We will affirm that judgment.

Novy pleaded that he purchased a homeowner's policy from appellee in 1971. By the terms of the policy appellee insured unscheduled personal property in the sum of $8,000.00 and scheduled personal property in the sum of $17,541.00. The risk insured against was loss by theft while such personal property was in Novy's house.

Novy pleaded further that between February 16 and 17, 1973, someone broke and entered his house and stole personal property which had a value of $25,468.76. Of that sum, Novy alleged that $18,673.00 was covered by the terms of appellee's policy.

At trial Novy called one witness, himself. He testified that he and his wife left Austin on February 16, 1973. When they returned on February 17, they discovered that the "house had been gone through." Novy said that drawers in the house had been pulled open and spilled out. He was of the opinion that "just about every room had been ransacked." Novy attested further that the window by the kitchen table was open and the window had been damaged to the extent that it could not be locked. He noticed that the window screen was cut, and that there were scratches on the window glass. Novy opined that somehow the window had been pried open.

Novy stated that his collection of antique maps, jewelry, radio and electronic sound equipment, and cameras was missing from his house. Novy declared that he had not located or reacquired any of the property taken from his house.

Appellee's evidence tended to show that there had not been a *bona fide* burglary and theft.

The court submitted the case to the jury by two special issues. The first special issue was couched in terms of the insurance policy and inquired whether the jury found that any part or all of the items of unscheduled and scheduled personal property was lost by Novy from his house between February 16 and 17, under circumstances when a probability of theft existed. In response to special issue one, the jury answered, "we do not." Special issue two inquired as to the total cash market value of the unscheduled personal property lost by appellant. In response to that special issue, the jury answered "none."

As previously written, the court entered judgment that Novy take nothing.

 Novy attacks the judgment by a number of points of error and sub-points of error. By point of error two Novy claims that the trial court erred in denying his motion for judgment *non obstante veredicto* since the answers of the jury " . . . were *contrary to the overwhelming weight and preponderance of probative, admissible evidence,* and there is no competent evidence upon which the jury's verdict or the court's judgment could have been predicated . . . " (Emphasis added). Because a motion for judgment *non obstante veredicto* is not a procedural basis for a "weight and preponderance" point of error, we necessarily treat point of error two as a "no evidence" point. University of Texas: Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960), see: *Airway Insurance Company v. Hank's Flite Center, Inc.,* 534 S.W.2d 878, 19 Tex.Sup.Ct.J. 217 (Tex., 1976).

 In the beginning, it should be observed that Novy's recovery under the insurance policy depended upon the circumstances surrounding the alleged burglary and upon his own testimony. The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the fact finder. The rule is not without exception, however, and conclusive effect may be given to the testimony of an interested witness provided his testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the same. *Gevinson v. Manhattan Construction Co. of Okla.,* 449 S.W.2d 458 (Tex.1969), *Broussard v. Moon,* 431 S.W.2d 534 (Tex. 1968), *Moss v. Hipp,* 387 S.W.2d 656 (Tex. 1965). It is our opinion, however, that Novy's testimony concerning the alleged burglary was neither clear, direct nor positive and there were circumstances tending to discredit or impeach that testimony. The basis for our opinion will be given in later paragraphs.

The point of entry by the alleged burglar was a kitchen window by which there were a table and chairs. One of the investigating police officers, William Whitaker, testified that no one could have come through the window without moving the table and chairs. Whitaker testified further that when he arrived at Novy's house the table and chairs were situated so close to the window that he would not have been able to sit in the chair without moving out the table. Novy testified that when he and his wife arrived at their house they found the house in total disarray. He and his wife did not move anything, including the table, before the police arrived. Also, the window through which the burglar supposedly made his entrance was in a raised position of no more than three to eight inches.

Officer Whitaker testified that when he arrived Novy appeared to be "fairly calm and relaxed, not very nervous or angry or anything like that." Officer Al Hersom described Novy as "cool, calm, and collected." By the time of the arrival of Whitaker, Novy had already started to compile a list of missing items. At one sitting, on the same afternoon as the discovery of the burglary, Novy was able to complete a list of some eighty-five items.

Within a few days after the alleged burglary, Officer Hersom discovered in a shop in Austin six or seven antique maps which Novy had reported as stolen. Hersom

learned that Novy had delivered those maps to the shop to sell on consignment. A short time thereafter, Novy refused to have any further discussions about the burglary with Officer Hersom. Novy's refusal to discuss the case further was on the advice of counsel.

Officer Hersom testified that in his opinion a burglary did not occur at Novy's house.

Several times during the course of the trial appellee's counsel was able to demonstrate to the jury that Novy had been less than candid in his testimony. For example, Novy testified on direct that he had left the employment of Halliburton Company because of a difference of "philosophies." Appellee's counsel introduced Novy's employment record with Halliburton which showed that Novy was fired by Halliburton for the reason that he had lied about his academic credentials in his application for employment and for the reason of his lack of productivity and attitude. Also, on direct examination Novy testified that when he was employed by Halliburton Company in 1969 he was first "put in charge" of Halliburton's operations in Germany and was later "put in charge" of their operations in Sicily, Italy, and France. On cross-examination it developed that Novy was only a trainee in the laboratory in Germany and that his later work was not managerial, but instead was in the laboratory.

In an attack on Novy's credibility appellee introduced into evidence Novy's scrofulous history of falsehood and petty crime involving moral turpitude. For example, Novy admitted that the "whole" application for employment with Halliburton Company was false, complete with bogus statements about academic credentials which he did not possess and past employers who did not exist. In 1967 Novy was convicted of aggravated assault on a female; in 1972 he was convicted of theft under five dollars in San Antonio; and in 1973 he was convicted of theft under five dollars in Austin.

■ The jury is the exclusive judge of the credibility of witnesses and the weight to be attached to their testimony. *Benoit v.* *Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). The jury may believe a witness although he has been contradicted, and, likewise, the jury may believe the testimony of one witness and reject the testimony of other witnesses. *Biggers v. Continental Bus System,* 157 Tex. 351, 303 S.W.2d 359 (1957). Considering the evidence and considering Novy's past disregard for the truth, we are of the opinion that with justification the jury could have refused to believe any of Novy's testimony.

■ We will overrule point of error two since the evidence did not conclusively establish that any part or all of the unscheduled and scheduled personal property was lost by Novy under circumstances when a probability of theft existed.

By points three and four Novy maintains that the district court erred in permitting the insurance company to introduce the criminal records of Daniel Levinson and David Hausman. The partial answer to Novy's contention is that the district court did *not* admit into evidence the criminal record of David Levinson.

The district court *did* admit the criminal record of David Hausman. The district court stated that the criminal record of Hausman was admitted ". . . for the very limited purpose as it relates to the application for employment of the Plaintiff Novy with Halliburton because this is the name of one of the references he gave on that application and that is the purpose for which it is admitted and no other purpose." The criminal record showed that Hausman had been convicted of burglary and theft.

The theory of the district court for admitting the evidence must have been that appellee was entitled to impeach Novy by showing that one of the references which he gave in the application for employment was not as stated therein, but instead was a convicted felon.

■ Before a witness may be impeached by prior inconsistent statements a predicate must first be laid. The predicate consists in asking the witness, on cross-

examination, whether he made the alleged contradictory statement. The witness is thereby given the opportunity to deny the statement and prepare to disprove it, or if he admits making it, to explain the statement. 1 McCormick and Ray, *Texas Law of Evidence* § 692 (2d ed. 1956). When the witness unqualifiedly admits making the statement, further proof should be excluded. 1 McCormick and Ray, *Texas Law of Evidence* § 695 (2d ed. 1956).

In the employment application, Novy had listed "Dr. D. Hausman" as a personal reference. Dr. Hausman's occupation was listed as "Research Chemist." On cross-examination of Novy, appellee's counsel developed that Hausman was not a "Doctor" and that he was not a "Research Chemist." In fact, Novy admitted that the employment application was wholly false, and that he " . . . falsified that application in order to obtain the job."

We are of the opinion that the court erred in admitting the criminal record of Hausman. In the first place, the fact that Hausman was a convicted felon was not necessarily inconsistent with Novy's statement in the application that Hausman was a "Doctor" and a "Research Chemist." More important, after Novy had admitted that the application was wholly false, there was then no basis for impeachment concerning the application.

We are not of the opinion that the error in admitting the criminal record of Hausman amounted to such a denial of Novy's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R. Civ.P. 434.

The judgment is affirmed.

Affirmed.